UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Russell, AtLee and Senior Judge Haley


JAMES BEEBE AND
 JUNE BEEBE

MEMORANDUM OPINION*
v.      Record No. 0349-20-3                                   PER CURIAM
SEPTEMBER 29, 2020

HARRISONBURG ROCKINGHAM
 SOCIAL SERVICES DISTRICT


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Clark A. Ritchie, Judge

(James Beebe; June Beebe, on brief), *pro se*.  Appellants submitting
on brief.

(Sheila Keesee Paladino, Assistant County Attorney; Sherwin J.
Jacobs, Guardian *ad litem* for the minor child, on brief), for appellee.
Appellee and Guardian *ad litem* submitting on brief.


James Beebe and June Beebe appeal the circuit court order denying their custody and

visitation petitions.  The Beebes argue that the circuit court erred in terminating their daughter's

parental rights to their grandson and in denying their custody and visitation petitions.  Upon

reviewing the record and briefs of the parties, we conclude that the circuit court did not err.

Accordingly, we affirm the decision of the circuit court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" Farrell v. Warren Cnty. Dep't of Soc. Servs., 59 Va. App. 375, 386 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180 (1991)).

The Beebes' daughter, Valerie Baldwin (mother), is the biological mother to the child who is the subject of this appeal; the child's father is unknown. At the time of the circuit court hearing, the child was nine years old.[2] The child had been diagnosed with attention deficit hyperactivity disorder, behavior disorder including oppositional and defiant behaviors, and sleep disorder, and he was at risk for mood disorder.

The child had lived primarily with his maternal grandparents, the Beebes.[3] In September 2015, the Harrisonburg Rockingham Social Services District (HRSSD) received a complaint that Mr. Beebe had hit the child with a television remote, causing him to have a bruised eye. HRSSD recommended that the child and his older sister reside with mother, instead of the Beebes, due to "extreme hoarding and unsafe conditions." The child then lived with mother, her boyfriend,

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Mother has an older child, who was seventeen years old at the time of the circuit court hearing, and a set of twins, who were approximately six years old. The Rockingham County Juvenile and Domestic Relations District Court terminated mother's parental rights to the twins, who reside with their paternal grandparents. Mother's older child lives with the Beebes.

[3] The Beebes also raised mother's older child.

Rick Crawford, and her other children.[4] Thereafter, HRSSD received reports alleging that mother and Crawford had physically abused the child and that there was "constant drinking and arguing" in mother's home.

In 2016, the child's behavior at his pre-kindergarten program was "problematic" and "escalating," so a school meeting was held to consider Therapeutic Day Treatment for the child. HRSSD offered Family Educational Services for Parent-Child Interactive Training for mother and the child to improve "the quality of the parent-child relationship and changing parent-child interaction patterns"; mother was not cooperative with the services. Subsequently, based on HRSSD's petition, the Rockingham County Juvenile and Domestic Relations District Court (the JDR court) found that the child was in need of services (CHINS). The JDR court ordered mother and the Beebes to cooperate with services and prohibited the child from spending the night at the Beebes' home "due to [the] condition of the home."

In May 2017, HRSSD moved to reinstate the CHINS petition on the docket after learning that the child had been residing with the Beebes and mother had tested positive for drugs. The JDR court allowed the child to live with the Beebes, but ordered them to cooperate with HRSSD and ensure that their home was safe. HRSSD provided the Beebes with an in-home worker.

In 2017, the child's pediatrician referred the child to the University of Virginia Children's Hospital (UVA) due to concerns about the child's behavior. UVA met with the child and the Beebes on several occasions, and the Beebes maintained telephone contact with UVA. The child had "significant" and "heightened" difficulties at school and home. Initially, the Beebes were not interested in medicating the child; however, as the child's problems escalated, the Beebes agreed "to discuss pharmacology." UVA, the child's school, and HRSSD became concerned

---

[4] Crawford is the biological father to mother's twins.

about medication compliance, however, after it was apparent that the Beebes were unilaterally altering the child's medication.

Kim Myers, an expert in assessing and treating children with extreme behaviors and emotional needs, worked with the child as part of the Therapeutic Day Treatment program at the child's school. Myers noticed that the child was hostile and threatening toward his peers and defiant toward adults. Despite offering new interventions and positive reinforcements, Myers did not see any overall progress with the child's behaviors.

Myers also expressed concern about Mr. Beebe's attitude and demeanor toward the child because he was "consistently hostile" and negative. During the 2017-2018 school year, the school restricted Mr. Beebe's movement within the school based on reports about his conduct. At the same time, school personnel became increasingly concerned about the child's safety and worried that he would harm himself because he had "a significant amount of energy" and was very impulsive. The Beebes acknowledged that the child exhibited the same behaviors at home, but minimized those behaviors.

On January 8, 2018, the Beebes filed petitions for custody and visitation of the child. On February 27, 2018, however, HRSSD removed the child from the Beebes' home after the child reported to Myers that Mr. Beebe had physically assaulted him.[5] The child stated that he did not want to return to the Beebes' house because Mr. Beebe was "mean." HRSSD petitioned to place the child into foster care after finding that mother's home was not "a safe place" for the child to live because of the history of domestic violence. The JDR court entered an emergency removal order. The child was seven years old when he entered foster care.

In April 2018, the JDR court adjudicated that the child was abused or neglected and subsequently entered a dispositional order. HRSSD offered numerous services to the Beebes,

_____

[5] Mr. Beebe denied assaulting the child.

including anger management classes for Mr. Beebe. He never acknowledged any anger management issues, so no progress was made. HRSSD referred the Beebes for a psychological and parenting capacity evaluation. After receiving the evaluation, HRSSD recommended that the Beebes participate in couple's counseling and a parenting education class through the GrandPEAS program, both of which they attended. In addition, HRSSD offered supervised visitation to the Beebes, but Mr. Beebe "did not regularly or often fully engage" with the child. In October 2018, the Beebes informed HRSSD that they were "not interested in additional services." The Beebes continuously denied inflicting any emotional, mental, or physical abuse on the child and refused to acknowledge their role in the child's placement in foster care.

Throughout the case, HRSSD's concerns about mother's history of domestic violence, substance abuse, and the child's special needs persisted and prevented the child from being placed in mother's care. Despite all the services offered by HRSSD, mother never demonstrated an understanding of why the child was placed, and remained, in foster care. Mother continually denied the Beebes' involvement in the abuse of the child, but in March 2019, stated that she thought Mr. Beebe "did something" to the child. HRSSD advised mother that the "main barrier" to returning the child to her home was her relationship with Crawford, who "was not committed" to having the child placed in the home, yet she continued living with him.

On July 12, 2019, the JDR court terminated mother's parental rights to the child and approved the foster care goal of adoption. After terminating mother's parental rights, the JDR court dismissed the Beebes' petitions for custody and visitation. The Beebes and mother appealed to the circuit court.

On October 17, 2019, the parties appeared before the circuit court. The social worker testified that HRSSD had offered mother and the Beebes every service that was available. HRSSD remained concerned that "neither the mother nor the grandparents could apply any of the

services offered to them to acknowledge [the child's] history of abuse and trauma and therefore then try to work on remediation of those conditions." HRSSD did not recommend placing the child with the Beebes because they refused to acknowledge their role in the child's removal, refused to cooperate with HRSSD, and failed to address Mr. Beebe's anger and inappropriate comments in front of the child.

The Beebes did not testify at the circuit court hearing. Their granddaughter, mother's oldest daughter, testified that the Beebes had raised her and that she did not "want for anything." Likewise, the Beebes' youngest son testified that they had provided for him. Both also described their relationship with the child as "close" and that they missed him.

At the conclusion of the evidence and the parties' arguments, the circuit court took the matter under advisement. On November 7, 2019, the circuit court issued a letter opinion, finding that mother had "made almost no progress on the issues that were the basis of [the child's] removal and placement into foster care." The circuit court terminated mother's parental rights under Code § 16.1-283(C)(2) and approved the foster care goal of adoption.[6] In addition, the circuit court found that the Beebes were "not a suitable placement option (or an option for custody) . . . due to an inability to recognize the special needs of [the child] and an unwillingness to promote a supportive environment for [the child] that would protect him from abuse and/or neglect." The circuit court denied the Beebes' petitions for custody and visitation. On November 21, 2019, the circuit court entered orders memorializing its rulings. This appeal followed.

---

[6] Mother appealed the circuit court's rulings, which this Court affirmed. See Baldwin v. Harrisonburg Rockingham Soc. Servs. Dist., No. 1994-19-3 (Va. Ct. App. July 14, 2020).

ANALYSIS

*Standing*

The Beebes argue that the circuit court erred by terminating mother's parental rights. HRSSD argues that the Beebes do not have standing to make this argument. We agree.

"Issues of standing are questions of law that this Court reviews *de novo*." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 325 (2013). "The purpose of requiring standing is to make certain that a party who asserts a particular position has the legal right to do so and that his rights will be affected by the disposition of the case." Id. (quoting Kelley v. Stamos, 285 Va. 68, 73 (2013)). "Simply put, 'one cannot raise third party rights.'" Id. (quoting DePriest v. Commonwealth, 33 Va. App. 754, 761 (2000)). As in Tackett, the Beebes "did not have any legal right to assert that mother's parental rights should not be terminated." Id. They only had standing to appeal the circuit's court's denial of their petitions for custody and visitation. Id. at 326. Therefore, we will not consider the Beebes' first assignment of error.

*Custody and visitation*

The Beebes also argue that the circuit court erred in denying their petitions for custody and visitation.[7] They contend that HRSSD did not advise them as to what was required to have the child returned to their care. They emphasize that the child should have been placed with his family, not in foster care.

HRSSD argues that the Beebes did not preserve their arguments for appeal; however, in their closing argument to the circuit court, the Beebes argued that there were "all kinds of remedies short of taking this child away." The Beebes' counsel endorsed the final order denying their petitions for custody and visitation as "Seen and objected to." "Ordinarily, endorsement of

---

[7] The Beebes did not appeal the permanency planning order approving the foster care goal of adoption.

an order '[s]een and objected to' is not specific enough to meet the requirements of Rule 5A:18 because it does not sufficiently alert the trial court to the claimed error." Canales v. Torres Orellana, 67 Va. App. 759, 771 (2017) (*en banc*) (quoting Herring v. Herring, 33 Va. App. 281, 286 (2000)). "Such an endorsement is sufficient to satisfy Rule 5A:18 only if 'the ruling made by the trial court was narrow enough to make obvious the basis of appellant's objection.'" Id. (quoting Herring, 33 Va. App. at 286). Furthermore, if "a trial court is aware of a litigant's legal position and the litigant did not expressly waive such arguments, the arguments remain preserved for appeal.'" Id. (quoting Brown v. Commonwealth, 279 Va. 210, 217 (2010)). Assuming without deciding that the Beebes preserved their argument for appeal, we find that the circuit court did not err in denying their petitions for custody and visitation.

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Here, the circuit court considered the evidence about how the child entered into foster care and the Beebes' relationship with the child. The circuit court commented on the child's behavioral problems at school, including his "issues with impulsiveness, reckless and/or dangerous behaviors, and profanity." The circuit court also found that Mr. Beebe was "overly harsh and non-supportive" of the child. The circuit court further found that Mr. Beebe could not "deal with [the child's] special needs" and "react[ed] in a way that [was] counterproductive to

[the child's] best interests." The circuit court concluded that it was "not a surprise that [the child was] fearful of Mr. Beebee [sic] and his behavior [was] dramatically affected by his interactions with him." The evidence proved that the Beebes never acknowledged their role in the child's removal from their home and his continued placement in foster care. The circuit court found that the Beebes refused to recognize the child's special needs and were unwilling to "promote a supportive environment for [the child] that would protect him from abuse and/or neglect." Based on the totality of the evidence, the circuit court did not err in finding that it was in the child's best interests to deny the Beebes' petitions for custody and visitation.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.